IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BLAINEY O. COLETON,                                            CV 07-6126-AA

               Plaintiff,                                      OPINION AND ORDER

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.


AIKEN, Judge:

### INTRODUCTION

Plaintiff Blainey O. Coleton brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security income. For the reasons set forth below, the decision of the Commissioner is affirmed.

1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on June 10, 2003 alleging disability since May 1, 2003, due to diabetes mellitus type I with retinopathy and neuropathy, partial rotator cuff tear, dysthymia, bipolar disorder, and a learning disability. Her application was denied initially and upon reconsideration. On February 7, 2006, a hearing was held before an Administrative Law Judge ("ALJ"). The hearing was continued on May 5, 2006. In a decision dated July 28, 2006, the ALJ found plaintiff was not entitled to benefits. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53

F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## ALJ's DECISION

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on May 1, 2003. This finding is not in dispute.

At step two, the ALJ found plaintiff had the medically determinable severe impairments of diabetes mellitus type I with retinopathy, partial rotator cuff tear, dysthymia, bipolar disorder, and a learning disorder. This finding is not in dispute.

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. This finding is not in dispute.

The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light exertional level work. Plaintiff is limited to above waist level lifting and no over the shoulder lifting. She cannot stand or walk for a prolonged period of time, climb ropes, ladders, or scaffolds. She cannot work in hazardous work areas or an area where her shoes could become wet or saturated. She needs visual as well as verbal instructions, and cannot complete detailed instructions or tasks. This finding is in dispute.

At step four, the ALJ found that plaintiff was unable to return to her past work as a certified nursing assistant. This finding is not in dispute.

At step five, the ALJ determined that plaintiff retained the ability to perform work as a electronic worker, semi-conductor wafer breaker, and cashier. As a result, the ALJ found plaintiff not disabled within the meaning of the Act.

## FACTUAL BACKGROUND

Plaintiff was born in 1985, and was 27 years old at the time of the hearing. Tr. 897.[1] She attended school through the twelfth grade, but did not graduate or obtain a GED. She has worked as a certified nurse's assistant and an animal care provider. Tr. 65, 479.

The medical records in this case accurately set out plaintiff's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly rejecting the opinion of the treating physician, (2) finding her not fully credible, and (3) failing to pose a complete hypothetical to the Vocational Expert ("VE").

I. Opinion of the Treating Physician

Susan Newcomb, M.D., began treating plaintiff in March 2005. In January 2006, Dr. Newcomb wrote:

/ / /

/ / /

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

4 - OPINION AND ORDER

>In my opinion, [plaintiff] could work a simple sedentary job full-time if she had the kind of personality that allowed her to attend to detail and be compulsive about her disease. She has an insulin pump and needs to be rather robot-like in her food choices and calculation of the carbohydrates within those foods and translating that into the amount of regular insulin that she delivers to herself via her pump with each meal. For the person with confidence, intelligence, excellent mental health including an optimistic attitude, one can accomplish this with ease. For the ordinary patient this is a difficult, overwhelming task. I believe she can lift 10 pounds occasionally, but she frequently has pain in her shoulders, both right and left, related to issues that predated my care. We have an MRI dated 06/15/2004, which showed a partial tear of her right rotator cuff and no MRI from the left shoulder. Due to her combination of shoulder pain, hand pain, chronic foot pain, un-controlled diabetes, and her overwhelmed feeling about her medical condition, I do not feel she can muster the psychiatric strength to maintain full-time work even in a simple sedentary job.

Tr. 742-43.

The ALJ noted Dr. Newcomb's opinion and stated:

>Much like Dr. Benston, Dr. Newcomb is Board certified in internal medicine and is not a licensed mental health professional. Therefore, the undersigned does not assign any weight to her opinion. It is noted that the claimant is able to maintain the "psychological strength" to care for an infant and for other activities she wants to do.

Tr. 22.

The ALJ also noted the opinion of BJ Scott, M.D. who treated plaintiff from April 2000 until April 2002. In October 2000 Dr. Scott noted that he told plaintiff that "even if she does have a low IQ that there are still jobs that she could perform and that I do not feel that she is disabled." Tr. 267.

The ALJ cited the May 1998 opinion of Hapreet Lotay, M.D., that there was no objective evidence of mental illness. Tr. 141.

5 - OPINION AND ORDER

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record.

The ALJ properly pointed out that Dr. Newcomb's opinion as to plaintiff's psychological ability to maintain employment is contradicted by both treating and non-treating physicians. Moreover, Dr. Newcomb's assessment is based on plaintiff's complaints and not supported by clinical evidence. The ALJ's rejection of Dr. Newcomb's opinion as to plaintiff's psychological strength is supported by clear and convincing reasons and was not error.

II. Plaintiff's Credibility

The ALJ found that plaintiff's "statements concerning the intensity, duration and limiting effects of her symptoms are not entirely credible." Tr. 19. The ALJ noted extensive evidence that plaintiff failed to comply with treatment that could improve her functioning. Tr. 20. Plaintiff argues that her non-compliance occurred primarily before her alleged onset date of May 2003.

However, there is extensive evidence that plaintiff was non-compliant with medical recommendations after her alleged onset date of disability. The record indicates that she was admitted to the hospital in July 2003 for hyperkalemia, at which time her treating physician noted that plaintiff "has not made more than a third of her followup appointments" since her baby was born in February. Tr. 354. Dr. Bentson noted that "it has been pretty clear from her phone calls to the office that she is not checking her sugars very often." Tr. 355.

Maribeth Kallemeyn, Ph.D., prepared an Intellectual Assessment Report in September, 2003, in which she stated:

> It appears that personality/characterlogical features, rather than lack of understanding and comprehension, have been the primary contributors to the client's noncompliance, poor judgment, and apparent lack of motivation in self-managing her condition. In her words, for example she has gotten 'sick of' managing her diabetes....

Tr. 483.

In March 2004 Dr. Bentson noted that plaintiff was "not adjusting her pump and not checking very often." Tr. 651. She advised her to quit smoking and start exercising. *Id.* In April 2004, Dr. Bentson noted symptoms of depression but that plaintiff "absolutely refuses to go to Linn County Mental Health." Tr. 646. Plaintiff met with Cindy Whitlock, R.N., a diabetes educator, on April 8, 2004, and was told to keep records of her insulin intake, carbohydrate intake, and pre and post blood glucose records, and to bring them back in two weeks. Ms. Whitlock noted that "In the past, her followup has been poor, so expectations are pretty low for compliance here. Tr. 696.

In June 2004, Dr. Bentson recorded poorly controlled diabetes, and that plaintiff had an insulin pump "and is aware of how to control her sugars; she just is not doing it right now." Tr. 641. Plaintiff was referred to physical therapy for her shoulder, but in July 2004 the therapist noted that had "missed a total of 3 appointments since the initial evaluation scheduled on June 29, 2004. The patient stated that she had forgotten about the appointments that she had scheduled." Tr. 615. On August 4, 2004, the therapist noted that plaintiff was cancelling her appointment for the fourth time in a row, in addition to the three no-shows. Tr. 613.

Dr. Bentson recorded that plaintiff was checking her sugars more frequently in September and October 2004, as she wanted to become pregnant. Tr. 627, 685. However, she continued to smoke cigarettes. Plaintiff cancelled an October appointment with Dr. Bentson, then failed to appear at the rescheduled appointment. Tr. 621. On November 12, 2004, W. Jeffrey Lear, M.D., examined plaintiff and noted that she was distraught "over being fired by Dr. Bentson and she has written Dr. Bentson a letter asking for a reprieve." Tr. 621. Plaintiff testified that it was a mutual decision that she no longer see Dr. Bentson. Tr. 914.

In December 2004 plaintiff established care with Melissa A. Marshall, M.D. Tr. 603. She noted that plaintiff's care was "recently discontinued at an outside provider regarding pain med use." *Id.* Dr. Marshall asked plaintiff to return in two weeks, but plaintiff did not show up. Tr. 600.

Plaintiff established care with Dr. Newcomb in March 2005, and reported that she "had had a falling out with Dr. Bentson over the issue of whether or not she should have an insulin pump." Tr. 730. Dr. Newcomb stated:

/ / /

8 - OPINION AND ORDER

> [Plaintiff] says she is seeking disability because her diabetes makes it such that she cannot work. She has too many complications...she says, including the chronic pain and difficulty seeing. In addition, she has to check her fingerstick every 2 hours and then take a snack and calculate the calories and carbs, multiply by her correction factor and adjust her insulin pump and that is just too much work to do on a regular job, so it is not practical.

*Id.*

On May 17, 2005, plaintiff returned for follow up of the diabetes education she started in February. "She has had several appointments throughout the past 2 months that she has canceled due to illness." Tr. 667. Plaintiff returned in July 2005 "after many cancellations," and her blood sugar control was worse: "She has always had difficulty with bolusing her meal time doses as far as not wanting to take the time to calculate. Even though her pump will do that for her it would require that she test her blood sugar first and that is what she has a problem doing." Tr. 665.

On January 12, 2006, Dr. Newcomb wrote that "it is hard to feel confident about her conversation bcs her symptoms are always described in the extreme," and "I wonder if her bulimia has truthfully been controlled over the past 2 months, like she says it is." Tr. 751. There is evidence that plaintiff checked herself out a hospital in mid-January. Tr. 805.

In February 2006 plaintiff began consulting with David Hempfling, R.N., M.S.N., C.D.E. as to insulin pump therapy. Tr. 831-34. Mr. Hempfling found

> "It is apparent that this patient is not engaged in diabetes self care.... Her knowledge of her insulin pump and carbohydrates are quite poor, surprisingly poor. She indicates that she is using her glucometer at least 6 times a day, but when I reviewed her log book, we are probably talking 3 a day and that log book only shows the last 3 days. My suspicion here is that the patient is not performing fingersticks as indicated and probably the reason she did not bring her glucometer with her today.

Tr. 833. Plaintiff cancelled her next two appointments, and on the third, failed to bring her glucometer, as requested. Tr. 829. Mr. Hempfling noted that he told plaintiff that if she cancelled or failed to show up for any more appointments he would have to consider having her seek care with another insulin pump specialist. *Id.*

Plaintiff contends that her noncompliance with medical advice is the result of a learning disability. The ALJ did find that she has a learning disability, but there is no objective evidence of a learning disability. Plaintiff and her mother have told providers that she has a learning disability, but the only intellectual assessment documents an full scale IQ in the low average range, with a performance IQ in the average range and a verbal IQ in the borderline range. As to the latter measure, Dr. Kallemeyn questioned whether was a "less than optimal effort and performance" on the verbal portion. Tr. 482.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

To determine whether Plaintiff's testimony is credible the ALJ may consider, for example: (l) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F.3d at 1284.

The ALJ's determination that plaintiff was not entirely credible as to the intensity, duration, and limiting effects of her symptoms is based on substantial evidence.

/ / /

///

III.  Vocational Expert

The VE testified that if an employee's production pace drops by more than ten percent, from fatigue caused by fluctuations in blood sugar or otherwise, all work would be precluded. Tr. 969.  The only evidence of excessive fatigue is plaintiff's subjective and properly discredited testimony.  Plaintiff does not point to any evidence that her production pace would vary or that her blood sugar levels would fluctuate if she followed medical advice.  If a plaintiff "does not follow prescribed treatment without a good reason, [Social Security Administration] will not find you disabled...."  20 CFR § 404.1530(b).

Similarly, plaintiff argues that the VE established that all work would be precluded if an employee were absent two days a month.  Again, there is no credible evidence that plaintiff would be absent two days a month, particularly if she followed the advice of her physicians.

Finally, plaintiff argues that the hypothetical question to the VE was inadequate because it failed to include the limitations arising from generalized neuropathy in her hands.  Plaintiff testified that she has pain in her hands and difficulty grasping.  The record does show objective evidence of generalized neuropathy in her hands. Tr. 719.  However, there is no credible evidence that there are any exertional limitations arising from the neuropathy.

The ALJ properly submitted to the VE all functional limitations arising from medically supported symptoms.  The ALJ's determination is supported by substantial evidence.

///

///

///

///

12  - OPINION AND ORDER

## **CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this  4  day of April  2008.


                                           /s/ Ann Aiken
                                              ANN AIKEN
                                   United States District Judge